IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID ROSENBLIT**, | **CIVIL ACTION** |
| Plaintiffs, | |
| | **NO. 20-3121-KSM** |
| v. | |
| **CITY OF PHILADELPHIA**, et al., | |
| Defendants. | |

MEMORANDUM

**MARSTON, J.**                                                                                         **January 28, 2021**

Plaintiff David Rosenblit moves to compel discovery responses from Defendants the City of Philadelphia and Lieutenant Robert Castelli. (Doc. No. 29.) Defendants oppose the motion. (Doc. Nos. 30, 32.) In addition, the City has filed a motion for a protective order, seeking permission to designate as confidential personnel and investigatory files that it will produce during discovery. (Doc. No. 33.) Rosenblit opposes the protective order. (Doc. No. 35.) For the reasons that follow, the Court will deny without prejudice Rosenblit's motion to compel and grant the City's motion for a protective order.

I.

According to the complaint, Rosenblit is a Jewish man, who works as a Deputy Sheriff's Officer in the Philadelphia Sheriff's Office. (Doc. No. 1 at ¶¶ 8–9, 16.) Rosenblit contends that his supervisor, Defendant Castelli, subjected him to a religiously hostile work environment and retaliated against Rosenblit for reporting Castelli's continuous harassment. (*Id.* at ¶¶ 21, 80, 86.) Among other things, Rosenblit alleges that Castelli made numerous offensive comments and anti-Semitic slurs to or about Rosenblit in front of coworkers (*id.* at ¶¶ 41, 46, 47–49),

encouraged coworkers to throw pennies at Rosenblit or leave them near his locker (*id.* at ¶¶ 44–45), and posted pictures of a man with an elongated nose with captions that suggested the drawing was an offensive caricature of Rosenblit (*id.* at ¶¶ 50–53 (explaining that pictures were posted in the Criminal Justice Center and left there for months)).

On January 31, 2019, Rosenblit complained about Castelli's conduct to a City human resources representative (*id.* at ¶ 67) and filed a charge of employment discrimination with the Employee Relations Unit (ERU) of the Mayor's Office of Labor Relations (*id.* at ¶ 31). The next day, Castelli followed Rosenblit into the bathroom and "stared him down with clenched fists." (*Id.* at ¶ 68.) Castelli continued to make discriminatory comments toward Rosenblit in the days that followed. (*Id.* at ¶¶ 70–71.) Then, in the summer of 2019, Rosenblit refiled his complaint with the City, and Castelli again followed Rosenblit around the Criminal Justice Center in a hostile manner. (*Id.* at ¶¶ 72–73.)

On May 28, 2020, the ERU found that Castelli had violated the City's harassment and religious/ethnicity policies. (*Id.* at ¶¶ 31–32.)

II.

Rosenblit filed his complaint against the City and Castelli on June 29, 2020, bringing counts for discrimination, hostile work environment, and retaliation under 28 U.S.C. § 1981, the Pennsylvania Human Resources Act, and the Philadelphia Fair Practices Ordinance.[1] (*See* Doc. No. 1.) Defendants answered (*see* Doc. Nos. 6, 15), and the parties began discovery.

---

[1] On December 4, 2020, Rosenblit filed an unopposed motion to amend his complaint, in which he proposes adding a fourth count against the City under Title VII. (Doc. No. 27 at p. 35.) Contemporaneous with this Memorandum, the Court enters an Order that grants the motion to amend.

A.

On November 18, 2020, Rosenblit filed his First Motion to Compel Discovery, asserting that the City failed to respond to Rosenblit's discovery requests and that Castelli's responses, which contained only objections, were inadequate.  (Doc. No. 21 at p. 4.)  The Court held a status conference with the parties on November 23, during which counsel for the City explained that its responses were delayed in part because lead counsel for the City was ill and in part because Rosenblit was refusing to sign a confidentiality agreement.  Despite these issues, the City agreed to produce its responses by December 4, 2020.  Castelli also agreed to provide supplemental responses by December 4, explaining that his previous responses were limited to objections because at the time, Castelli did not have access to the documents in the City's possession that he needed to answer Rosenblit's discovery.  In light of Defendants' agreement to provide additional responses by December 4, 2020, the Court denied as moot Rosenblit's first motion to compel.  (Doc. No. 25.)

On December 8, 2020, Rosenblit filed his Second Motion to Compel Discovery.  (Doc. No. 29.)  He asserts that Defendants have once again failed to provide complete responses to his discovery requests.  (*Id.* at ¶ 5.)  Without distinguishing between the City and Castelli, Rosenblit states in conclusory fashion that "numerous deficiencies abound."  (*Id.* at ¶ 7.)  He then identifies eight allegedly deficient responses:

- #3.  Defendants' response is not responsive to the inquiry.  This request tasks the Defendants to identify by name the individuals who have the authority to discipline Mr. Castelli.  "The Appointing Authority" is not an individual.

- #4–8, 11, 14:  The Defendants make improper objections.

(*Id.* at ¶ 7.[2]) Rosenblit also states that "Defendants refuse to produce Defendant Castelli's personnel file, disciplinary file, and ERU file absent Plaintiff signing of a confidentiality agreement — a concession that Plaintiff is under no obligation to accept." (*Id.* at ¶ 6.) Rosenblit does not provide a memorandum of law or otherwise explain the legal basis for his motion. (*See id.* at n.1.)

On December 16, 2020, the City and Castelli filed separate responses to Rosenblit's motion. (Doc. Nos. 30, 32.) The City argues that we should deny the motion because Rosenblit has not met his burden of showing that the discovery requests seek relevant information. (Doc. No. 32 at pp. 3, 14.) The City also notes that it is prepared to produce Castelli's personnel file and the ERU investigatory file if Rosenblit signs a confidentiality agreement. (*Id.* at pp. 14–15.) Rosenblit did not file a reply to the City's response.

In his response brief, Castelli similarly argues that Rosenblit has not shown that his discovery requests seek relevant information and that many of the requests are overbroad, as they are unlimited in time and scope. (Doc. No. 30 at pp. 2, 5.) He also argues that he "is not the

---

[2] Rosenblit's proposed order lists with greater specificity the information that he seeks from Defendants. He seeks production of: (1) Castelli's personnel file, (2) Castelli's disciplinary file, (3) Rosenblit's ERU file, (4) all documents reflecting formal and informal complaints made in the last two years by Sheriff's Department employees for claims of religious or ethnic discrimination or retaliation, and (5) "all tangible things in Defendant's' [sic] possession regarding disciplinary actions taken against Sheriff's Department employees from May 2015 through present regarding violations of City policies on discrimination, retaliation, harassment and religious/ethnic discrimination." (Doc. No. 29 at p. 2.) He also seeks: (1) the names of the individuals who have authority to discipline Castelli; (2) all harassment, discrimination, and/or retaliation complaints that have been made against Castelli; (3) all physical altercations, uses of forces, and/or fights between Castelli and any other person in the last seven years; (4) whether within the past ten years there has been a federal, state, or local investigation as to whether the Philadelphia Sheriff's Department maintains a culture, policy, or practice of engaging in harassment, discrimination, or retaliation, (5) whether within the past three years "a Philadelphia Sheriff's Department employee has been disciplined for harassment, discrimination, or retaliation [sic]," (6) all hearings, council meetings, special investigator task forces, City initiatives or programs that involved or concerned harassment, discrimination, and/or retaliation within the Philadelphia Sheriff's Office from 2015 through the present; and (7) whether any individual in the Sheriff's Department other than the Plaintiff has made a complaint about pennies left at his/her locker. (*Id.* at p. 3.)

4

custodian of the records for the City" and therefore, has "correctly direct[ed] Plaintiff to the records to be provided by the City." (*Id.*)  Rosenblit filed a short reply to Castelli's response, arguing that the standard for discoverability is broader than admissibility and that Rosenblit does not seek confidential information related to Castelli's personnel file (i.e., social security numbers, home address, or non-psychiatric medical records). (Doc. No. 31.)  Again, Rosenblit fails to cite any cases in support of his position or explain why his discovery requests seek relevant information. (*See id.*)

### B.

While Rosenblit's second motion to compel was pending, the City filed its Motion for a Protective Order. (Doc. No. 33.)  The City seeks an order allowing it to designate as confidential personnel files and files related to internal investigations. (*Id.*)  The proposed order would allow the City to mark these documents as "confidential information," produce them under a framework that maintains their confidentiality, and require notice to the City before the filing of any document containing "confidential information." (*Id.* at p. 4.)  Rosenblit opposes the protective order. (Doc. No. 35.)  He argues that an umbrella protective order is unnecessary and that confidentiality should only be asserted after a document by document review. (*Id.* at pp. 2, 6.)

For the reasons that follow, the Court will deny Rosenblit's motion to compel and grant the City's motion for a protective order.

### III.

Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  When the opposing party fails to respond or

provides incomplete responses to a discovery request, the requesting party may "move for an order compelling disclosure or discovery" pursuant to Federal Rule of Civil Procedure 37.  Fed. R. Civ. P. 37(a)(1); *see also* Fed. R. Civ. P. 37(a)(3)(B).  On a motion to compel, the moving party "bears the initial burden of showing the relevance of the requested information."  *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001); *see also Three Bros. Supermarket, Inc. v. United States*, Civ. A. No. 2:19-cv-2003-KSM, 2020 WL 5231575, at *1 (E.D. Pa. Sept. 1, 2020) (same).  "The burden then shifts to the party resisting discovery to justify withholding it."  *Morrison*, 203 F.R.D. at 196.

Rosenblit argues that "numerous deficiencies abound" in Defendants' discovery responses, citing "#3" and "# 4–8, 11, and 14."  (Doc. No. 29 at p. 6 ¶ 7; *see also id.* at ¶ 6 (explaining that "Defendants have refused to produce Castelli's personnel file, disciplinary file, and ERU file absent Plaintiff signing a confidentiality agreement").)  Despite claiming that there are "numerous deficiencies," Rosenblit does not include a memorandum of law with his motion, cite to any cases, or substantively argue his position.

In a footnote, Rosenblit asserts that he does not have to include a memorandum under Local Rule of Civil Procedure 26.1(g), which states that a movant need not include an accompanying brief if "no [discovery] response or objection has been timely served" by the nonmoving party.  Local R. Civ. P. 26.1(g).  But here, Defendants filed responses and objections to Rosenblit's discovery,[3] so Local Rule 26.1(g) does not apply, and Rosenblit was required to file a supporting memorandum of law.  *See* Local R. Civ. P. 7.1(c) ("Every motion not certified

---

[3] To the extent Rosenblit argues that Rule 26.1(g) applies because Defendants' responses were untimely, we disagree.  The Court denied as moot Rosenblit's previous motion to compel because Defendants agreed to provide discovery responses by December 4.  (Doc. No. 25 at p. 1.)  Both Defendants provided responses on December 4.  (*See* Doc. No. 30 at pp. 24, 25, 29, 30, 39, 40; Doc. No. 32-3 at p. 2; Doc. No. 32-4.)

as uncontested, or governed by Local Civil Rule 26.1(g), shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion."). The Court could deny Rosenblit's motion for this failure alone. *See Rorrer v. Cleveland Steel Container Corp.*, Civil Action No. 08–671, 2012 WL 138756, at *4 (E.D. Pa. Jan. 18, 2012) ("Plaintiff's failure to comply with Local Rule 7.1(c) could have justified dismissal of her motion without any further consideration."); *Core Constr. & Remediation, Inc. v. Village of Spring Valley*, No. Civ.A. 06-CV-1346, 2007 WL 2844870, at *8 (E.D. Pa. Sept. 27, 2007) ("Under the rules of this district, failure to cite to any applicable law is enough to deny a motion as without merit." (quotation marks omitted and alterations adopted)).

In this case, the failure to provide a supporting memorandum is fatal to Rosenblit's motion for another reason — he has not met *his* burden of showing the relevance of his requested discovery. *See Morrison*, 203 F.R.D. at 196 ("A party moving to compel bears the initial burden of showing the relevance of the requested information."). Rosenblit not only failed to support his motion with a memorandum, but he also chose not to file a reply brief in response to the City's argument, and even in his reply brief to Castelli, he failed to argue or discuss how the discovery he seeks is relevant to the claims or defenses in this case.[4] Because he has not satisfied his burden of showing that his discovery requests seek relevant information, we will deny his motion to compel without prejudice.[5]

---

[4] In his reply brief, Rosenblit states that evidence of Castelli's prior bad acts should be "permitted if only for impeachment or for any other purpose enumerated in Fed. R. Evid. 404(b)." (Doc. No. 31 at p. 1.) However, he does not explain this argument further, and the Court finds it insufficient on its own to cure the deficiencies identified above.

[5] In the alternative, the motion to compel is denied for failure to comply with the meet and confer requirements outlined in our publicly available Policies and Procedures. Specifically, Rosenblit has not complied with Section 2.C.2, which states:

> In filing a discovery motion, the certificate of counsel must provide specific details of the parties' efforts to resolve the dispute informally. These efforts ***must include verbal***

IV.

Apart from Rosenblit's motion to compel, the City seeks a protective order for its employee personnel files and files related to internal investigations. (Doc. No. 32 at pp. 14–15; Doc. No. 33 at p. 4.)

A.

Under Federal Rule of Civil Procedure 26(c), the Court may, for good cause, issue a protective order "to shield a party from annoyance, embarrassment, oppression, or undue burden or expense" during discovery. Fed. R. Civ. P. 26(c)(1); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). "A protective order is intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings." *In re Avandia Mktg. Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (quotation marks omitted); *see also McKenna v. City of*

---

*communications*, whether by phone or in person. Exchanges of letters or e-mails are not sufficient. It is not sufficient to report that opposing counsel was not available or that the parties made "reasonable efforts." **The Court will deny a discovery motion that does not meet these requirements**.

Judge Marston's Policies and Procedures at p. 11 (emphasis added).

The attorney certification attached to Rosenblit's motion shows that Plaintiff's counsel did not in good faith confer with counsel for either Defendant before filing this motion. In the certification, counsel states that he "addressed the Defendants' deficiencies on November 30, December 3, and December 7." (Doc. No. 29 at p. 4.) But Defendants did not serve their responses until December 4, so he could not have conferred with them about the deficiencies in those responses on November 30 or December 3. (*See id.* at p. 13; Doc. No. 30 at p. 4 n.1; *id.* at pp. 24–25, 29–30, 39–40; Doc. No. 32 at pp. 6–8; Doc. No. 32-3; Doc. No. 32-4 at pp. 2, 14–15, 17–18, 26–27; Doc. No. 32-5 at p. 2.) As for December 7, our review of the emails sent by Rosenblit's counsel leave the Court skeptical that he was willing to engage in a good faith discussion that avoided Court intervention. (*See* Doc. No. 32-5 at p. 2 (stating that he doesn't "need to have any reason to oppose" the protective order and that he is "not chomping at the bit to shield this anti-Semite from some much-needed public scrutiny"); *id.* at pp. 2, 4 (stating that he is open to a resolution but also that "[o]utside of judicial intervention, I don't have a solution").) Because Rosenblit's attorney has not complied with the Court's meet and confer requirements, we dismiss his motion to compel on this ground as well. If Rosenblit renews his motion, counsel must verbally discuss any alleged deficiencies with counsel for each Defendant, and attempt in ***good faith*** to reach a compromise without Court intervention.

*Philadelphia*, No. Civ.A. 98-5835, 2000 WL1521604, at *1 (E.D. Pa. Sept. 29, 2000) ("Whether th[e] disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public."). The "party seeking a protective order over discovery material must demonstrate that good cause exists for the order." *In re Avandia*, 924 F.3d at 671. "Good cause means that disclosure will work a clearly defined and serious injury to the party seeking closure," and the injury "must be shown with specificity." *Id*. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not support a good cause showing." *Pansy*, 23 F.3d at 786.

In determining whether good cause exists, the Third Circuit has instructed us to consider the following factors, which are "neither mandatory nor exhaustive":  (1) whether the disclosure will violate any private interests; (2) whether disclosure of the information will cause a party embarrassment; (3) whether the information is being sought for a legitimate purpose or for an improper purpose; (4) whether the sharing of information among the litigants will promote fairness and efficiency; (5) whether confidentiality is being sought over information important to public health and safety; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *Id.* at 67–72. Applying those factors here, we find that they weigh in favor of granting the protective order.[6]

---

[6] Rosenblit argues that the City wrongly seeks an "umbrella protective order" and that such protective orders are "explicitly proscribed under *In re Avandia*." (Doc. No. 35 at p. 6.) We find two flaws with this argument. First, it is not entirely clear that the City seeks an "umbrella protective order," as that phrase is typically used. The City is not asking to designate as confidential every document that it turns over in discovery. Instead, it is looking to protect two categories of documents — personnel records and investigatory files. *Cf. Bolus v. Carnicella*, No. 4:15-cv-01062, 2000 WL 4275653, at *2 (M.D. Pa. July 24, 2020) (analyzing request for an "umbrella protective order" over all documents produced by the defendant during discovery). And although the City has not asked for an *in camera* review of each document, it has demonstrated good cause as to the two categories. That is all *In re Avandia* requires.

B.

In this case, the most important factor is the first: whether disclosure of the documents will violate privacy interests. Beginning with the personnel files, Rosenblit seeks disciplinary records for every employee who was disciplined for violating City or departmental policies regarding workplace harassment, discrimination, retaliation, or religious/ethnic discrimination from 2015 to present. (*See* Doc. No. 29 at pp. 10–11, 14, 17.) Rosenblit also seeks Castelli's full personnel file, which contains Castelli's employment history for the last 23 years, including evaluations, promotions, demotions, reprimands, and disciplines. (Doc. No. 29 at p. 2; Doc. No. 32 at p. 10.)

---

Second, to the extent the City does seek an umbrella protective order, nothing in *In re Avandia* prohibits umbrella orders under Rule 26. *See In re Avandia*, 924 F.3d at 672–73 (explaining that "[o]nce a document becomes a judicial record, a presumption of [public] access attaches," and the court must then "conduct a document-by-document review of the contents of the challenged documents" (quotation marks omitted)). As the Third Circuit explained in *Cipollone v. Liggett Group, Inc.*:

> It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26 on its head. That does not mean, however, that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected. It is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad "umbrella" protective order upon a threshold showing by one party (the movant) of good cause. Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential. After the documents delivered under this umbrella order, the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain documents would shift to the other party.

785 F.2d 1108, 1122 (3d Cir. 1986). Although *Cipollone* focused on the use of umbrella protective orders in complex cases, courts have applied its reasoning in non-complex cases as well. *See, e.g.*, *Bolus*, 2000 WL 4275653, at *2 (analyzing request for umbrella protective order under framework outlined in *Cipollone*); *see also Cipollone*, 785 F.2d at 1122 n.18 (analyzing the benefits of an umbrella order over a document-by-document review, including the fact that the "umbrella order approach . . . encourages parties to work problems out between and among themselves").

10

Courts in this District have consistently recognized the confidential nature of personnel files. *See, e.g.*, *Miles v. Boeing Co.*, 154 F.R.D. 112, 115 (E.D. Pa. 1994) ("Personnel files are confidential and discovery should be limited."); *McKenna*, 2000 WL 1521604, at *2 ("The interests of the [p]laintiffs with regard to" personnel files, records from the City's Internal Affairs Division, disciplinary records for the parties, and complaints with the Equal Employment Opportunity Commission, "cannot overcome the privacy and safety interests that the [d]efendants and the public have in their confidentiality."); *Northern v. City of Philadelphia*, No. CIV. A. 98-6517, 2000 WL 355526, at *3 (E.D. Pa. Apr. 4, 2000) ("Although personnel files are discoverable, they contain confidential information and discovery of them should be limited.").[7]

We find *Miles*, *McKenna*, and *Northern* persuasive and agree that unimpeded disclosure of the personnel files in this case would violate the privacy interests of the relevant employees. First, public disclosure of the employment records and disciplinary complaints of non-parties — who have no opportunity to defend themselves or provide context for their records — would open those employees to potential censure and embarrassment. *Cf. Morrison*, 203 F.R.D. at 197 ("Defendants' concern regarding the confidential nature of the requested information is well placed as such discovery will necessitate the disclosure of portions of the personnel files of the named officers and derogatory information including such determined to be unfounded."). And although Castelli is a defendant in this case, public disclosure of his full personnel file, which includes every major employment decision from his 23-year career with the City, would violate

---

[7] Rosenblit argues that the "presumed confidentiality of personnel files is a legal fiction" contained in pre-*In re Avandia* cases. (Doc. No. 35 at p. 6.) It is true that most of the cases recognizing the confidentiality of personnel files, including *Miles*, *McKenna*, and *Northern*, were decided before *In re Avandia*, because the Third Circuit issued its opinion only a year and a half ago. However, nothing in *In re Avandia* abrogated those cases or questioned their continued viability.

11

his privacy interests as well. *Cf. Miles*, 154 F.R.D. at 115 ("In the present case, it is clear that disclosure of [the] personnel files would constitute an invasion of privacy.").

Public disclosure of the City's investigatory file would also threaten the privacy interests of nonparties. The City asserts that the investigatory file "includes confidential complaints and witness interviews" that were given "with the expectation of privacy, discretion, and even confidentiality." (Doc. No. 32 at p. 15.) The file also includes a complaint by Rosenblit's coworker who is not a party to his case, and the City argues that disclosing "the identities of the complainants, accused employees, and the contents of these allegations to the public puts the complainant at risk of potential retaliation and unwanted attention and may make individuals more reluctant to file complaints in the future." (*Id.*) We agree that public disclosure of the investigatory file would violate the privacy interests of the other complainant and the witnesses who gave statements and interviews with the understanding that their statements would remain confidential. *Cf. McKenna*, 2000 WL 1521604, at *2 ("In their request for witness statements, the Plaintiffs did not limit the request to statements made by the parties. Dissemination of such information could jeopardize the privacy interests of private citizens."); *see also id.* at *6 ("[T]he complaints [of bias, harassment, and discrimination] that the Plaintiffs seek implicate the privacy interests of private individuals who may have filed complaints or witnessed actions leading to complaints."). For those reasons, we find that the first *Pansy* factor weighs strongly in favor of a protective order under Rule 26.

The remaining factors do not outweigh the first. As described above, unrestricted dissemination of the personnel files, including disciplinary histories, is likely to embarrass Castelli and the non-parties whose files would be open to the public.[8] Under the third factor, we

---

[8] Rosenblit argues that the City has "failed to articulate (let alone substantiate) in what [w]ay Defendant Castelli will be embarrassed or the degree to which he will be embarrassed by non-closure of

12

find that the documents are being sought for a legitimate purpose. Although there is some suggestion that Rosenblit's attorney may release this information to the public, it is more likely that these documents are sought because they contain highly relevant information. The investigatory file in particular contains witness statements, summaries of other evidence, and the City's findings related to Castelli's conduct, which are relevant to the parties' claims and defenses. For that reason, granting a limited protective order also promotes the fair and efficient sharing of this information among the parties. The order will allow the parties to have full access to the information that they need without requiring a page-by-page confidentiality review at this stage of the litigation. *See Pansy*, 23 F.3d at 787 ("The most common kind of order allowing discovery on conditions is an order limiting the persons who are to have access to the information disclosed and the use to which these persons may put the information." (quotation marks omitted)).

The remaining three factors focus on the public's interest in unimpeded disclosure. Under these factors, we note that the City is a public entity and that the public has an interest in seeing unlawful discrimination eradicated from its public employers because employment discrimination could be a sign of more widespread discrimination. *See Pansy*, 23 F.3d at 786 ("The public's interest is particularly legitimate and important where, as in this case, at least one of the parties to the action is a public entity or official."); *see also McKenna*, 2000 WL 1521604, at *2 ("Evidence of discrimination within the ranks may be an indication of the treatment received by the public at-large."). That said, the public also has an interest in keeping the City's

---

these files." (Doc. No. 35 at pp. 5–6.) We disagree. We recognize the importance of public access and agree with Rosenblit that the public has an interest in curing unlawful employment discrimination caused by public employers. However, this public interest does not outweigh the embarrassment to Castelli if his entire employment file, containing every reprimand, discipline, and review he has received over the course of a 23-year career with the City were released to the public, particularly if it were released to the media.

investigatory process confidential. *Cf. McKenna*, 2000 WL 1521604, at *2 (explaining that the public has a "wide-reaching interest in maintaining the confidentiality of these documents that involves protecting people who provide information to investigators and protecting the investigative process, itself"). And, as the City points out, public disclosure of the investigatory file, which contains nonparty statements given under the auspices of confidentiality, could discourage future complainants and witnesses from coming forward. *Cf. id.* ("With such heavy interests of the public at issue, the court will not require disclosure of these documents" including records and witness statements collected by the City's Internal Affairs Department "absent a confidentiality agreement.").

Having weighed the public and private interest factors, the Court finds that good cause exists for entering a protective order over these documents.[9]

V.

For those reasons, Rosenblit's motion to compel is denied without prejudice. Rosenblit may refile his motions to compel if his counsel meets and confers in good faith with defense counsel and those meetings prove unsuccessful. If Rosenblit chooses to file another motion to compel, he must either designate his motion as unopposed or include a supporting memorandum of law. The City's motion for a protective order is granted.

An appropriate order follows.

---

[9] Because the City is a party to this suit, we must also consider the effect the confidentiality order will have on the City's obligations under right to know laws. *Pansy*, 23 F.3d at 791 (recognizing this is "another factor which must be considered in the good cause balancing test"). In *Pansy*, the Third Circuit held that "where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law." *Id.* However, "[t]o avoid complicated inquiries as to whether certain information would in fact be available under a freedom of information law, courts may choose to grant conditional orders." *Id.* Because neither party discussed the implications of freedom of information laws in this case, we will not analyze them at length and choose instead to grant a conditional order.